**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FLUET & ASSOCIATES, PLLC** ) | |
| 1751 Pinnacle Drive ) | |
| Suite 1000 ) | |
| Tysons, VA 22102 ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| *v.* ) | |
| ) | |
| **OFFICE OF MANAGEMENT AND BUDGET** ) | |
| 725 17th Street NW, Suite 9272 ) | |
| Washington, D.C. 20503 ) | **Case No.** 24-2067 |
| ) | |
| SERVE: ) | |
| Office of Management and Budget ) | |
| Shalanda Young, Director ) | |
| 725 17th Street, NW ) | |
| Washington, D.C. 20503 ) | |
| ) | |
| Matthew M. Graves ) | |
| U.S. Attorney's Office for D.C. ) | |
| 601 D Street, NW ) | |
| Washington, D.C. 20530 ) | |
| ) | |
| Merrick Garland ) | |
| U.S. Attorney General ) | |
| 950 Pennsylvania Avenue, NW ) | |
| Washington, D.C. 20530 ) | |
| ) | |
| *Defendant*. ) | |

## COMPLAINT

Plaintiff/Requester Fluet & Associates, PLLC ("Fluet") hereby brings this action against the Office of Management and Budget ("OMB") to compel this agency's compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In support thereof, Plaintiff hereby states the following:

**SUMMARY**

1.      In Section 10301(1)(B) of the Inflation Reduction Act ("IRA") of 2022, Congress appropriated $15 million to the IRS to produce a report analyzing whether and how it could implement a free and direct efile system for tax returns, the costs of developing and operating such a system, and how taxpayers might view it (the "Report").

2.      The IRS's unanticipated decision to use some of the money from this provision of the IRA to build and implement a direct efile system, "Direct File," and pilot it in the 2024 tax season has fundamentally reshaped the relationship between the IRS and American taxpayers, firmly inserting the IRS into the business of tax return preparation in contrast to over 100 years of practice since the United States Government began collecting income taxes in 1916.

3.      In Direct File, the IRS assumes the awkward—and arguably conflicting—position of participating in the preparation of tax returns it will both *file* and *audit.* For example, the IRS could theoretically track information entered into a draft tax return on its own direct efile system and subsequently utilize such information to identify filed returns for further examination or audit, even if the subject information was deleted from the final version of the return submitted to the IRS by the taxpayer.

4.      Understanding that this is an issue of significant public interest, in February of 2024, Fluet, through undersigned counsel David S. Panzer, submitted a set of FOIA requests to OMB seeking records related to the involvement of OMB employees, including but not limited to employees of OMB's United States Digital Service ("USDS"), in the design, implementation, and development of Direct File (the "FOIA Request").

5.      In particular, the FOIA Request sought records related to the selection, number, job classification, time, and pay of OMB employees, including USDS employees, that have

participated in the Direct File taskforce and work, as well as records related to the structure, scope, cost, and funding of the Direct File taskforce and work.

6.      To date, OMB has failed to satisfy even its initial obligation of determining whether it would comply with the request and communicating that decision to the Requester.

7.      In the meantime, while the Requester has struggled to obtain the public records it is entitled to receive under FOIA, as mentioned above, the Treasury and the IRS chose to use a portion of the funds allocated by Congress for drafting the Report to actually move forward with implementing a pilot version of Direct File for the 2024 tax filing season.[1] Simultaneously, the IRS has obfuscated the true costs of the program, including costs associated with OMB/USDS involvement.[2] Now, following the Direct File pilot's implementation, the IRS plans to make Direct File a permanent option for filing federal tax returns beginning in the 2025 tax filing season.[3] However, the IRA *only* authorized the IRS to draft the Report; it did not allocate any funds for a pilot program or a permanent tax-preparation platform.

8.      In any event, the public discussion and progress of the Direct File program, including documented OMB/USDS involvement,[4] yields the ineluctable conclusion that the

---

[1] *See* https://www.irs.gov/about-irs/strategic-plan/irs-direct-file-pilot (last visited July 8, 2024).

[2] GAO, *IRS Direct File: Actions Needed during Pilot to Improve Information on Costs and Benefits*, https://www.gao.gov/products/gao-24-107236, April 9, 2024, at 6 ("To build and run the [Direct File] pilot, IRS is using 29 employees from the [USDS] . . . ", but despite this fact, IRS's spending estimates did not include "information on the USDS resources used for Direct File.").

[3] *See* https://www.irs.gov/newsroom/irs-makes-direct-file-a-permanent-option-to-file-federal-tax-returns-expanded-access-for-more-taxpayers-planned-for-the-2025-filing-season (last visited July 8, 2024).

[4] *See* https://www.irs.gov/about-irs/a-closer-look-at-the-irs-direct-file-pilot ("Direct File is built in-house at the IRS by a team of tax experts, product managers, software engineers, designers, and data scientists. ***The IRS is collaborating with the U.S. Digital Service*** and 18F, government

Defendant indeed possesses records responsive to the FOIA Request and that it should produce pursuant to the statute. Nevertheless, OMB has not provided ***any*** records to the Requester.

9.      Generally speaking, prompt access to the records responsive to the FOIA Requests is necessary to effectuate FOIA's purpose of providing meaningful government transparency. More specifically, the records sought in these various FOIA Requests are crucial for Mr. Panzer's, his clients', and the general public's understanding of an IRS program built and proceeding with OMB's involvement that will significantly impact all of America's taxpayers.

10.      In fact, in its 2023 Annual Report to Congress, delivered to Congress on January 10, 2024,[5] the National Taxpayer Advocate[6] identifies the third most serious problem at the IRS as "Transparency" and, specifically regarding direct efile, "The National Taxpayer Advocate recommends that the IRS: … 2. Provide specific and verifiable details on the Direct File pilot; the number of taxpayers utilizing the tool; processing successes, issues, and lessons learned associated with the tool; and the costs of a direct e-file system."[7]

11.      Accordingly, Plaintiff also submitted and administratively exhausted FOIA requests to the Treasury and IRS seeking documents related to the Direct File program, then initiated FOIA litigation against both the Treasury and the IRS when the agencies failed to produce responsive

---

teams that specialize in supporting federal agencies to develop new digital services like Direct File.") (emphasis added) (last visited July 8, 2024).

[5] *See*  https://www.taxpayeradvocate.irs.gov/reports/2023-annual-report-to-congress/newsroom/ (last visited July 8, 2024).

[6] The National Taxpayer Advocate is "an independent organization within the Internal Revenue Service (IRS)" and its "job is to strive to ensure that every taxpayer is treated fairly and knows and understands their rights." https://www.taxpayeradvocate.irs.gov/about-us/ (last visited July 8, 2024).

[7] *National Taxpayer Advocate Annual Report to Congress 2023*, https://www.taxpayeradvocate.irs.gov/reports/2023-annual-report-to-congress/full-report/ at page 47 (last visited July 8, 2024).

documents in their possession. *See Fluet v. Dept. of Treasury and IRS* (DDC Case No. 24-cv-00340-TSC).

12.     Although OMB had an opportunity to be transparent in a way that the Treasury and the IRS have not been, OMB has also prevented the Requester and others from learning about Direct File by declining to follow FOIA's requirements. This Court should order these agencies to comply with their obligations under FOIA.

13.     Therefore, Plaintiff/Requester Fluet seeks declaratory relief establishing that OMB has violated FOIA and injunctive relief directing OMB to comply with FOIA's requirements to make determinations regarding each of the Requester's FOIA Requests and to produce records that are responsive to those requests.

## JURISDICTION AND STANDING

14.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

16.     Fluet, the Plaintiff, is a boutique law firm located in Tysons, Virginia that focuses on international trade, government contracts law, litigation, and corporate law.

17.     OMB, the Defendant, is an Executive Branch department of the United States Government and "oversees the implementation of the President's vision across the Executive Branch."[8]

## LEGAL FRAMEWORK

18.     The Federal Government's disclosure mandate under FOIA is broad, and the statute requires agencies to produce records that are "reasonably described" by a requester who has complied with the "published rules stating the time, place, fees (if any) and procedures to be followed" in connection with submitting a FOIA request (with certain limited exceptions). *See* 5 U.S.C. § 552(a)(3)(A).

19.     As a first step, once it receives a FOIA request, an agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) . . . whether to comply with such request," and "shall immediately notify" the requester of (1) "such determination and the reasons therefor," (2) the right of the requester "to seek assistance from the FOIA Public Liaison of the agency," and (3) "in the case of an adverse determination," the right of the requester to submit an appeal to the head of the agency and to "seek dispute resolution services from the FOIA Public Liaison of the agency or the Office of Government Information Services." *Id.* § 552(a)(6)(A)(i).

20.     In *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*"), the U.S. Court of Appeals for the District of Columbia Circuit explained that in order to make the "determination" required by 5 U.S.C. § 552(a)(6)(A)(i), the agency must at least: "(i) gather and review the [records sought]; (ii) determine and communicate

---

[8] *Office of Management and Budget*, White House, https://www.whitehouse.gov/omb/ (last visited July 8, 2024).

the scope of the [records] it intends to produce and withhold, and the reasons for withholding any [records]; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188.

21.     Congress has specified limited circumstances in which federal agencies may obtain more time to make the above-mentioned "determination." First, an agency may toll the 20-working day deadline to seek additional information from a requester or "to clarify with the requester issues regarding fee assessment," but in either case, "the agency's receipt of the requester's response . . . ends the tolling period." 5 U.S.C. § 552(a)(6)(A)(ii).

22.     Second, an agency may extend the 20-working day deadline for an additional ten working days by giving a written notice to the requester that sets forth "unusual circumstances" to justify a deadline extension and providing the date by which the agency expects to make the determination. *Id.* § 552(a)(6)(B)(i). If the agency wants to extend the deadline for more than ten working days, the agency must notify the requester "that the request cannot be processed within the time limit specified in that clause and shall provide the [requester] an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." *Id.* § 552(a)(6)(B)(ii).

23.     If an agency *does* issue a determination with respect to a FOIA request and that determination is adverse, the requester may submit an appeal to the head of the agency, who must make a determination with respect to any appeal within twenty working days. *Id.* §§ 552(a)(6)(A)(i)-(ii).

24.     Furthermore, any person seeking records pursuant to 5 U.S.C. § 552 "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency

fails to comply with the applicable time limit provisions." *Id.* § 552(a)(6)(C)(i). At this point, a requester may challenge an agency's failure to follow FOIA's processing deadlines in U.S. District Court.

25.     A requester's refusal to reasonably modify their request for records or arrange an alternative time frame for a response to their request when asked to do so by an agency "may be considered as a factor" by the District Court in determining whether "exceptional circumstances" exist that should permit "the agency additional time to complete its review of the records." *See id.* §§ 552(a)(6)(B)(ii), 552(a)(6)(C)(i). However, and notably, "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests . . ., unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii).

26.     Regarding the actual production of records, "[u]pon any determination by an agency to comply with a request for records, the records shall be made promptly available" to the requester. *Id.* § 552(a)(6)(C)(i).

27.     Finally, Congress recognized that in certain limited instances, records may be withheld from FOIA's broad disclosure mandate and, therefore, it created nine categories of exemptions. *See id.* § 552(b). Of relevance to this case, one of the exemptions covers "matters that are . . . specifically exempted from disclosure by statute." *Id.* § 552(b)(3). A provision of the U.S. Code, 26 U.S.C. § 6103, generally restricts the U.S. Government's ability to disclose tax return information, but no such information was sought in the FOIA requests at issue in this case.

## STATEMENT OF FACTS

I.     *The IRS Report and Direct File*

28.    The IRA, which President Biden signed into law on August 16, 2022, allocated $15 million to the IRS for a report prepared by a "Task Force to Design an IRS-Run Free 'Direct Efile' Tax Return System." Pub. L. No. 117-169, § 10301(1)(B), 136 Stat. 1818, 1832 (2022).

29.    Specifically, Congress directed the IRS to prepare and deliver a report to Congress that explored:

> "(I) the cost (including options for differential coverage based on taxpayer adjusted gross income and return complexity) of developing and running a free direct efile tax return system, including costs to build and administer each release, with a focus on multi-lingual and mobile-friendly features and safeguards for taxpayer data; (II) taxpayer opinions, expectations, and level of trust, based on surveys, for such a free direct efile system; and (III) the opinions of an independent third-party on the overall feasibility, approach, schedule, cost, organizational design, and Internal Revenue Service capacity to deliver such a direct efile tax return system . . . ."

*Id.*

30.    The IRS ultimately submitted the Report to Congress on May 16, 2023.[9]

31.    Also on May 16, 2023, the Deputy Secretary of the Treasury issued a letter to the IRS requesting a Direct File pilot option for the 2024 filing season.[10]

32.    The IRS employed the services and resources of OMB, including but not necessarily limited to USDS.[11]

---

[9] *IRS Submits Direct File Report to Congress; Treasury Department Directs Pilot to Evaluate Key Issues*, Internal Revenue Serv., https://www.irs.gov/newsroom/irs-submits-direct-file-report-to-congress-treasury-department-directs-pilot-to-evaluate-key-issues (May 16, 2023).

[10] Treasury Inspector General for Tax Administration, *Inflation Reduction Act: Interim Results of the Direct File Pilot*, https://www.tigta.gov/sites/default/files/reports/2024-06/2024408031fr.pdf (June 25, 2024).

[11] *See* https://www.irs.gov/about-irs/a-closer-look-at-the-irs-direct-file-pilot (last visited July 8, 2024).

33.    In its audit of the Direct File pilot, the U.S. Government Accountability Office ("GAO") determined that the IRS had provided an inaccurate estimate of the costs of the program.[12]

34.    One of the deficiencies that the GAO audit noted in the IRS's Report was its failure to account for labor costs, including costs for the USDS employees who built and ran the Direct File pilot.[13]

35.    Nevertheless, the IRS is moving ahead with full-scale implementation of Direct File for the next tax filing season.[14]

II.    *The FOIA Requests*

36.    Given the public importance of the IRS-run Direct File system, the Requester was (and continues to be) interested in learning more about the scope of the Direct File system, including OMB/USDS's involvement, and how the program arose when only the Report was authorized.

37.    Requester has separately filed suit against the Treasury and the IRS regarding how the Report was developed and about the involvement of specified groups and individuals by means of what may have been an unlawful sole source agreement in an attempt to secure the IRS's desired outcome of a recommendation for a direct efile system. Records surrounding OMB/USDS's

---

[12] GAO, *IRS Direct File: Actions Needed during Pilot to Improve Information on Costs and Benefits*, https://www.gao.gov/products/gao-24-107236, April 9, 2024, at 4-6.

[13] *Id.* at 6 ("To build and run the [Direct File] pilot, IRS is using 29 employees from the [USDS] . . . ", but despite this fact, IRS's spending estimates did not include "information on the USDS resources used for Direct File.").

[14] *See* https://www.irs.gov/newsroom/irs-makes-direct-file-a-permanent-option-to-file-federal-tax-returns-expanded-access-for-more-taxpayers-planned-for-the-2025-filing-season (last visited July 8, 2024).

participation in the transition of Direct File from a Report topic to a pilot, and ultimately to a full-scale efile system will further elucidate this important subject.

38.    With these issues in mind, on February 23, 2024, the Requester submitted FOIA requests signed by attorney David S. Panzer to OMB seeking the following fifteen (15) categories of records related to the OMB's involvement in the design, implementation, and development of Direct File:

- Category 1: Documents that list, show, or reveal the total number of OMB/USDS employees who served on the Direct File task force or participated in the cross-agency team designing and developing Direct File prototype(s) and pilot product(s). The total number of OMB/USDS employees should be expressed as both individual headcount and Full-time Equivalent count. ("FTE", as defined by the Government Accountability Office). [Job titles and specialties were also requested.]

- Category 2: Documents that list, show, or reveal the job classification (i.e. software developer) of each OMB/USDS employee or FTE who served on the Direct File task force or participated in the cross-agency team designing and developing Direct File prototype(s) and pilot product(s).

- Category 3: For each individual OMB/USDS employee who was involved in the Direct File project, documents that list, show, or reveal approximately what percentage of that employee's time was dedicated to the Direct File project in each month from August 2022 through the present.

- Category 4: For each individual OMB/USDS employee who was involved in the Direct File project, documents that list, show, or reveal the General Schedule pay grade at which that employee was compensated during each month of involvement in the Direct File project. We have no interest in anything that would identify the name of the personnel. [Nothing including names was requested].

- Category 5: All documents and communications by, between, or among OMB personnel, Department of Treasury ("Treasury"), IRS, or other agencies regarding the scope of work USDS employees provided, or are anticipated to provide, for the Direct File project.

- Category 6: All documents and communications by, between, or among OMB personnel, Treasury, IRS, or other agencies that set forth or evidence the criteria OMB used to determine which USDS employees were assigned to support or participate in the Direct File project.

- Category 7: All documents and communications by, between, or among OMB personnel relating to the composition or selection of the Direct File team.

- Category 8: All documents that list, show, or reveal any cross-agency contracts, Memorandums of Understanding, arrangements or awards of any type, whether executed or not, between a) OMB and/or USDS, and b) IRS, Treasury, General Services Administration ("GSA"), or other agency, related to the IRS's use of USDS employees on the Direct File project.

- Category 9: All documents that list, show, or reveal any cross-agency contracts, Memorandums of Understanding, arrangements or awards of any type, whether executed or not, between a) OMB and/or USDS, and b) IRS, Treasury, GSA, or other agency, related to coordination between USDS and employees of IRS or any agency's contractor personnel, on the Direct File project.

- Category 10: All documents that list, show, or reveal any contracts, Memorandums of Understanding, arrangements or awards of any type, whether executed or not, between a) OMB and/or USDS, and b) non-governmental counterparties, related to OMB's participation in the Direct File project.

- Category 11: All justifications and approvals ("J&As") and/or determinations and findings ("D&Fs") submitted in support of an OMB award made using other than full and open competition (to include sole source awards) concerning or relating to OMB's participation in the Direct File project.

- Category 12: Documents that list, show, or reveal the total labor cost (salary and overhead) of the OMB/USDS employees who were involved in the Direct File project, during the period of such involvement.

- Category 13: Documents that list, show, or reveal the total cost, excluding labor, of OMB's participation in the Direct File project.

- Category 14: All documents and communications by, between, or among OMB personnel, Treasury, IRS, or other agencies concerning any funding received, or to be received, by OMB from the $15 million provided for the Direct File project through IRA § 10301(1)(B).

- Category 15: All documents and communications by, between, or among OMB personnel, Treasury, IRS, or other agencies showing the source, authorization, or appropriation of OMB funding for its activities supporting the Direct File project.

*See* Letter from David S. Panzer to Tim Nusraty, FOIA Officer, February 23, 2024 ("Request"),

attached hereto as **Exhibit A**, and Email from David S. Panzer to Tim Nusraty, FOIA Officer,

February 23, 2024, attached hereto as **Exhibit B** (transmitting Request to OMB).

39.    In each category of the Request, the Requester provided OMB with any relevant time period from which it was seeking records, noted which offices and units were likely to possess responsive records, and requested that OMB prioritize certain categories of records, provide an index of any withheld records, confirm in writing when it determined that all responsive records had "been furnished or specifically identified and denied under . . . Section 552(b) of FOIA," and confirm in writing if OMB did not have any records responsive to a particular category of records. The Requester also stated that it would accept rolling productions of records.

40.    On February 26, 2024, OMB acknowledged the FOIA Request, and assigned it tracking number 2024-303. **Exhibit C**.

41.    Having received no further response from OMB, on April 15, 2024, Requestor wrote:

*With respect to our request (OMB FOIA No. 2024-303), we note that more than 20 working days have passed since the request was received by your office on February 23, 2024, and we have not received OMB's determination, as required by 5 U.S.C. § 552(a)(6)(A)(i).  Our need for the requested documents is acute and growing more urgent by the day.  As GAO reported last week, IRS's cost estimate for the Direct File system is inaccurate because, among other infirmities, the cost estimate failed to include labor costs for the U.S. Digital Service ("USDS") employees who built and are running the Direct File pilot.  GAO, IRS Direct File: Actions Needed during Pilot to Improve Information on Costs and Benefits, https://www.gao.gov/products/gao-24-107236, April 9, 2024, at 6 ("To build and run the [Direct File] pilot, IRS is using 29 employees from the [USDS] . . . ", but despite this fact, IRS's spending estimates did not include "information on the USDS resources used for Direct File.").  This is a matter of great public importance because "[c]omplete cost information informs decisions about whether the pilot should be made permanent . . . ."  Id.*

*OMB's failure to provide documents responsive to this FOIA request is interfering with the public assessment of Direct File.  For instance, the Senate Finance Committee scheduled a hearing for tomorrow, April 16, 2024 at 10:30 a.m., where IRS Commissioner Danny Werfel will testify about the 2024 tax filing season and 2025 IRS Budget.  Direct File is a likely to be discussed during the hearing.  The true costs of Direct File—including USDS labor costs—should be part of the public discussion about the future of Direct File, but they have been concealed instead.*

*Given that we have not received OMB's determination within the applicable time period, the FOIA deems that we have exhausted our administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).  Although we have exhausted our administrative remedies, we seek confirmation that OMB's determination did not inadvertently send its determination to an incorrect e-mail account or mailing address.*

13

*Please advise. If OMB has determined to provide responsive documents, please propose a schedule for producing them.*

**Exhibit D** (attaching April 9, 2024 GAO Report).

42.     OMB responded by letter dated April 16, 2024, but failing to meet the minimum requirements of compliance with FOIA:

> Thank you for inquiring about the status of your FOIA request. The current status of your FOIA request is that a search for potentially responsive records has been initiated. Until that search is completed, OMB is not able to provide an estimated date of completion. OMB is experiencing a significant backlog and we are doing our best to respond to each FOIA request as expeditiously as possible in the order they are received.
>
> We understand the urgency of your request and will keep you apprised of the status of your FOIA request. In the meantime, should you have any questions, you can reach OMB's FOIA Office anytime by email at OMBFOIA@omb.eop.gov or by phone at 202-395-FOIA.

**Exhibit E**.

43.     To date, OMB has not issued a determination to the Requester explaining whether it will comply with any part of the FOIA Request, and it has not produced any documents responsive to the Request.

### COUNT I
**OMB Missed FOIA's Mandatory Determination Deadline for Requester's FOIA Request**

44.     Plaintiff re-alleges and incorporates by reference the allegations made in paragraphs 1 through 43.

45.     As Requester and Plaintiff, Fluet has a statutory right to final determinations from OMB regarding its FOIA Request in a manner that complies with FOIA. OMB has violated Fluet's

rights in this regard by unlawfully delaying its provision of a FOIA-compliant determination beyond the deadline that FOIA mandates.

46.     Fluet's ability to learn about a matter of crucial public importance—the development, piloting, and future full implementation of an IRS-run direct efile program for tax returns has been, and will continue to be, adversely affected if OMB is allowed to continue violating FOIA's determination deadlines as it has done so with respect to the facts underlying this count.

47.     Unless enjoined and made subject to a declaration of Fluet's legal rights by this Court, OMB will continue to violate Fluet's rights to receive public records under FOIA.

48.     Fluet is entitled to reasonable costs of litigation and attorney fees pursuant to FOIA. 5 U.S.C. § 552(a)(4)(E)(i).

**Prayer for Relief**

Wherefore, Fluet respectfully requests that this Court:

A.     Declare that OMB has violated FOIA;

B.     Order OMB to make a FOIA-compliant determination regarding Fluet's FOIA

Request;

C.     Order OMB to make records responsive to the FOIA Request promptly available

by a date certain;

D.     Retain jurisdiction to ensure that OMB provides Fluet with all of the responsive

records and the reasonably segregable portions of any lawfully exempt records

sought by the Requester's FOIA Request by a date on which all parties and the

Court can agree;

E.     Award Fluet its costs and reasonable attorney fees pursuant to 5 U.S.C.

§ 552(a)(4)(E)(i) or 28 U.S.C. § 2412; and

F.     Grant such other and further relief as the Court may deem just and proper.


Dated: July 16, 2024                    Respectfully submitted,


                                        */s/ David S. Panzer*
                                        David S. Panzer, D.C. Bar No. 470677
                                        **Fluet**
                                        1751 Pinnacle Drive, Suite 1000
                                        Tysons, Virginia 22102
                                        T: (703) 590-1234
                                        F: (703) 590-0366
                                        DPanzer@fluet.law
                                        e-file@fluet.law

                                        *Counsel for Plaintiff*